366 P.2d 72

Fay WARD, Jr., Plaintiff and Respondent,

v.

John TURNER, Warden Utah State Prison, Defendant and Appellant.

No. 9422.

Supreme Court of Utah.

Oct. 26, 1961.

under a conviction in the Second Judicial District Court of rape. Such conviction was affirmed by this court on appeal,[1] where a more detailed statement of the facts is available.

A young mother of three children, the youngest just recently born, was attacked by a strange man at her home about 4 o'clock in the morning, after her husband had gone to work. At the special writ hearing this woman testified that she was first raped by force, then her attacker, with force, committed sodomy by sexual penetration of her rectum. At that time she was not acquainted with Ward, but identified him as her attacker some time later while he was being held in jail in connection with another charge. Ward's defense was that he was not her attacker and he tried to prove an alibi.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., for appellant.

Glenn C. Hanni, Salt Lake City, for respondent.

WADE, Chief Justice.

Defendant Turner, State Prison Warden, appeals from a special writ judgment in the Third Judicial District Court ordering plaintiff Ward's release from the prison for lack of due process of law occurring during his trial. He was serving a term

In the trial of the special writ the evidence showed that Dr. Ross, who examined the assaulted woman on the same day after the attack, wrote in his office record that he found "markedly reddened skin around the vaginal and rectal areas." Later in talking to members of the police force, he gave the impression that the vaginal as well as the anal intercourse had been perpetrated, and he ended a letter to the police department with this statement: "Diagnosis: Rape by a sodomist." Dr. Ross testified in the special writ hearing that be-

1. See State v. Ward, 10 Utah 2d 34, 347 P.2d 865.

fore Ward's trial for rape he told Mr. Newey, the assistant district attorney who was in charge of the prosecution, that the assaulted woman "had been 'criminally assaulted' from anus or sodomy" and Newey advised him that Ward was charged with rape and not sodomy; so in his testimony, "without perjury," he should only mention sodomy if expressly asked about it. Dr. Ross further testified that he told Newey that he could not say whether rape had been committed, but felt that it had not, and that he thought Newey understood that such was his feeling, but that he was certain that sodomy had been forcibly committed. Newey testified that his impression was that the doctor thought both rape and sodomy had been forcibly committed.

Also in the special writ hearing, Dr. Branch, head of psychiatry at the University of Utah, testified that he and his assistants had questioned and subjected Ward to tests which disclosed him to be sexually normal and not a deviate or pervert. The doctor pointed out many kinds of sexual perverts and deviates; that the tests were fairly accurate in disclosing deviational tendencies and interests. He expressed his opinion as an expert that a normal person, as the tests indicated Ward was, would not after forcibly committing rape on a woman then proceed to forcibly commit sodomy by rectal penetration. He opined that only a sexual pervert or deviate with a strong interest in that kind of sex deviational interests would do such a thing, and that such deviational interests would be disclosed by the tests given. He concluded that it was very unlikely that Ward, in whom the tests disclosed no sodomy interests, was the person who assaulted and forcibly committed the sodomy charged.

The trial court found that Mr. Newey and Dr. Ross had probably misunderstood each other, but that no false testimony had been given. He concluded that Ward in his prosecution for rape was entitled to have disclosed to him and his attorney that sodomy had been committed, and that had this been done, he probably would have been acquitted. On these premises the trial court found a lack of due process of law in the trial in which Ward was convicted and ordered Ward's release from prison. The State appeals from this judgment.

We conclude that the judgment must be reversed for lack of substantial evidence which would reasonably indicate that had the evidence of sodomy been disclosed to defendant before trial, he would probably have been acquitted.[2]

A prosecuting attorney should do his best to convict the guilty and free the innocent. If he has evidence favorable to the defendant which is not available to the

2. See 5 Utah Law Review 92–94; 33 A.L.R.2d Annotation 1421.

defense, he should make such evidence available to the defense and not suppress it. If the prosecution suppresses evidence favorable to the defendant's innocence which, if disclosed, would have avoided the conviction, such suppression may be grounds for freeing the convicted person under a special writ.

Where rape is charged the suppression of evidence that sodomy was also committed unless it created, or substantiated, doubts that the accused was not the attacker, would not be evidence favorable to the accused. Such evidence might be inadmissible. Proof of sodomy, which is probably a more heinous offense than rape, would probably tend to inflame the jury emotionally against the accused. Here the complaining witness insisted in the special proceedings that both crimes were committed against her on the same morning. A clear showing that only sodomy was committed where only rape was charged might require an acquittal as a matter of law. But here there was ample evidence, that rape was committed, to support a conviction of rape even though sodomy were also committed immediately thereafter. So the evidence of sodomy would normally be unfavorable to the accused. Even the psychiatrist did not claim that a pervert would not commit sodomy immediately after committing rape.

We confront the problem of whether the expert psychiatric testimony justifies the order of release on the grounds that the prosecution withheld material evidence from the defense which, if revealed, would have materially affected the jury's decision on whether Ward was the attacker. Undoubtedly the psychiatric testimony has a bearing on that question. However, such evidence, assuming without deciding its admissibility, would have been merely cumulative and somewhat vague and might have been confusing and certainly would not have been controlling.[3] It might even be doubted that the defense would have used this evidence had it been disclosed, for the evidence of the commission of sodomy as well as rape might have weakened defendant's case with the jury by arousing their emotions against him as much as the psychiatric opinion evidence would have strengthened his case. In order to justify a release of a convicted person under a writ of habeas corpus or coram nobis, or other special writ, the evidence of his innocence must be stronger than would be necessary in the first instance in support of a motion for a new trial, for such special writs are applied for after the defendant's conviction has

3. See note 2, and Jordon v. Bondy, 1940, 72 App.D.C. 360, 114 F.2d 599; Cummings v. United States, 9 Cir., 1926, 15 F.2d 168; Ex parte Mooney, 10 Cal.2d 1, 73 P.2d 554.

been affirmed or denied on appeal, and in a sense they invade the usual rules for the finality of judgments. The most that can be said for this application for a special writ is that had the evidence been promptly disclosed it might have justified the granting of a new trial.[4] In order to sustain the granting of a special writ in a case like this, something more is required than merely that the evidence might have justified the granting of a new trial had it been promptly disclosed. So the order of the trial court releasing Mr. Ward from prison must be nullified.

No costs awarded.

McDONOUGH, J., concurs.

CALLISTER, Justice.

I concur in the result, being of the opinion that the record does not disclose the knowing use of perjured testimony by the prosecution, nor a suppression of evidence which would constitute a denial of due process to the defendant. However, I must disagree with the main opinion insofar as it intimates or suggests that the testimony of the psychiatrist as to the defendant's sexual proclivities was properly admitted at the special writ hearing, or that it might have been admissible at

the trial had the issue of sodomy been raised.[1]

HENRIOD, J., concurs in the views expressed in the opinion of CALLISTER, J.

CROCKETT, Justice (concurring specially).

I concur in vacating the order releasing the plaintiff for the reason that there is no showing that there was either perjury or willful suppression of evidence material to the crime with which the plaintiff here was charged.

I think it is important to observe that even if there had been some impropriety of the character plaintiff claims, the order should not have been for his outright release. If such an order were proper, this anomaly would result: if a defendant convicted of a crime took his appeal within the time and in accordance with the requirements of the law, and showed substantial error, he would not be freed, but would be granted a new trial. See State v. Lawrence, 1951, 120 Utah 323, 234 P. 2d 600 and authorities there cited. But if a defendant permitted the time for appeal to go by and then brought such a proceeding as this, and substantial error were found, he would be set free.

---

4. See note 2, and Ex parte Swain, 34 Cal. 2d 300, 209 P.2d 793.
1. Wharton, Criminal Evidence, 12th Ed., Sec. 929; State v. Sinnott, 24 N.J. 408,

132 A.2d 298; cf. People v. Jones, 42 Cal. 2d 219, 266 P.2d 38, which is criticized in 102 U. of Pa.L.R. 980.

It should be kept in mind that the use of such a writ for collateral attack upon a judgment runs crossgrain to the usual and established procedures of the law. The utmost caution and forbearance should be observed to avoid the incongruity above stated and to see that the writ is used in aid of the administration of justice and not to abuse or embarrass it. See statement in Reffkin v. Mayo, 1934, 115 Fla. 214, 155 So. 674. To this purpose, even when the court deems that due process of law has been so denied or abused that the writ of habeas corpus should be granted, the proper order is not necessarily the complete release of the defendant.

I appreciate the reasoning that the judgment should be regarded as a nullity before such a writ is warranted, and that some illogic may be confronted in holding a defendant after his conviction is so declared. However, the expanding notion of some of our courts as to the function of post-conviction writs in practical effect turns them into writs of error, which the writer protests is a misconception of the purpose and a misuse of such a writ. Nevertheless, the facts of life must be reckoned with, and in my opinion a necessary concomitant of that view is that there should only be a remand to the proper custodial officer or to the court having jurisdiction because this is necessary to avoid the palpable distortion of the proc-esses of justice which may result from freeing the accused entirely.

The subject was dealt with by the California Supreme Court in the case of Ex parte McCoy, 1948, 32 Cal.2d 73, 194 P.2d 531, 533. It held McCoy's conviction invalid because he had been denied the right of counsel. In considering whether he should be set free or remanded to stand trial, the court placed emphasis on Section 1484 of the California penal code, which provides that in habeas corpus, " * * * the court or judge must * * * dispose of such party *as the justice of the case may require* * * *." (emphasis added) and quoted from previous cases that, "A violation of the defendant's constitutional rights during the trial * * * is ground for attack on the judgment in a habeas corpus proceeding if the petitioner has no other adequate remedy," which McCoy did not have because the time for appeal had expired. It further stated that the subsequent malfunction of officers depriving the trial court of jurisdiction to convict and sentence him, "did not acquit him of the offense, and he is still subject to being tried upon any valid charge made against him in the complaint."

Another case illustrating this point is that of Selbe v. Hudspeth, 1953, 175 Kan. 154, 259 P.2d 204, 207. The court said that even though the trial court was without jurisdiction to accept the petitioner's

plea of guilty, and that the sentence imposed was a nullity, "that however does not mean that petitioner is entitled to his unrestrained liberty. The order of this court is that the plea of guilty and the judgment sentencing petitioner * * * be * * * set aside and that respondent deliver the petitioner to the sheriff of Cowley County for return to that county for further procedure in harmony herewith."

It is significant that our Rule 65B(f) relating to habeas corpus does not provide that when "it appears that a person is unjustly imprisoned or restrained of his liberty" he shall be discharged, but provides that in such instance, "*appropriate relief shall* * * * *be granted.*" (Emphasis added.) It is obvious that "appropriate relief" would not always be to exonerate the defendant. But in many instances it would be a remand to the proper custodial officer, as in the Selbe case, supra, or to the court having jurisdiction, as in the McCoy case, supra, for whatever further proceedings seem necessary and just in the premises. See also 39 C.J.S. Habeas Corpus § 102, p. 688 for text statement and numerous authorities cited to this effect. This conclusion is also supported by Section 78-35-3, U.C.A.1953,

which provides that no person discharged upon habeas corpus shall be again restrained except: "(2) If after discharge for defect [of] proof * * * the prisoner is again arrested on sufficient proof and committed by legal process for the same offense."

Sometimes the interests of justice would be served by a remand to correct a defect in the record, such as taking a proper plea, imposing a proper sentence, correcting a commitment, or something of that character. If so, there should be a remand so that purpose could be accomplished rather than the outright release of the defendant. This would avoid the thwarting of justice which might occur in setting at large one who has been convicted of a crime and who may have further potential for doing so, merely because some error or omission has occurred in the proceedings against him. Justice demands that the interest of the public, as well as of the accused, be safeguarded. As Justice Cardozo said in Snyder v. Massachusetts, 1934, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674. "Justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."