The STATE of Utah, Plaintiff and Respondent,

v.

Melvin James WORKMAN, Defendant and Appellant.

No. 16922.

Supreme Court of Utah.

July 22, 1981.

6. *Pollesche v. Transamerican Ins. Co.*, 27 Utah 2d 430, 497 P.2d 236 (1972).

7. *Themy v. Seagull Enterprises, Inc.*, Utah, 595 P.2d 526 (1976).

Douglas E. Wahlquist, Walter F. Bugden, Jr., Salt Lake City, for defendant and appellant.

David L. Wilkinson, Robert N. Parrish, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals his bench trial conviction of rape and burglary. His sole contention on appeal is that he was denied a fair trial because the prosecution did not disclose the full content of statements he allegedly made to a trial witness.

The preliminary hearing was held on May 8, 1979. The state presented its case and rested. Thereupon, defense counsel (Robert Van Sciver),[1] called Deputy Sheriff Virgil Johnson as a witness. Johnson testified that he expected one Connie Riley to appear as a witness at trial. This prompted the following colloquy excerpted from the record:

Q. (By Mr. Van Sciver) Connie Riley, R-i-l-e-y?

A. I believe so, yes.

Q. And is she a friend of Mr. Workman's?

A. Yes.

Q. *And you claim that Mr. Workman has made some admissions to her?* [Emphasis added.]

A. Yes, sir.

Q. Have you interviewed Connie Riley?

A. Yes, I have.

Q. *What does she claim Melvin said to her?* [Emphasis added.]

MR. CAMPBELL: Objection; hearsay.

THE COURT: Mr. Van Sciver?

MR. VAN SCIVER: I'm not offering it for the truth of the matter assertive, but to determine what was said.

MR. CAMPBELL: It's still hearsay as to this particular—it's an out-of-court statement.

THE COURT: Whether she even said it is hearsay.

MR. VAN SCIVER: He claims she said it. I'm not offering it for the truth of the matter, sir.

MR. CAMPBELL: It's a discovery process.

THE COURT: Well, let's make this brief. Go ahead and answer the question.

MR. CAMPBELL: I renew my objection, Your Honor. It's still an out-of-court statement—

THE COURT: Overruled; go ahead.

A. Her statement consisted of a conversation with Mrs. Workman [defendant's mother] and also with Mr. Workman, the day after this incident occurred. There were some statements made by Mrs. Workman and also Melvin about this particular incident of what took place.

Q. (By Mr. Van Sciver) What was said?

A. Well, she said that when she received this call that initially it was from Mrs. Workman, stating that Melvin was in

1. This appeal is presented by successor counsel.

trouble again and she didn't know what to do and that he had entered a young girl's apartment and lost his wallet. And also that—

Q. Now, is this a friend of Mrs. Workman's?

A. Yeah, they know each other, yes.

Q. Go ahead.

A. And that Mrs. Workman and that Mel went back up to the apartment later on that morning and apparently Mr. Workman had dropped a flashlight and they located the flashlight out in front of the apartment. And they didn't find the wallet.

Q. These are all statements which Mrs. Workman made to Connie Riley?

A. Yes, best I recall.

Q. What statements did Mr. Workman make?

A. That he had entered the apartment—

Q. Who did he make these to?

A. To Connie Riley. He entered the apartment and took $80 cash out of a wallet that was located in the front room. And that he put the wallet underneath a t. v. pillow in the front room area. And prior to leaving, dropped his wallet, some way or another.

Q. When did you discover the statement made by Mrs. Riley?

A. I believe it was about two to three weeks after this occurred.

Q. Did she call you and volunteer the statement?

A. The information was obtained by someone through Sgt. Carr. I don't recall who that was.

Defense counsel pursued the subject no further, directing the remainder of his interrogation of the witness to other matters.

On October 18, 1979, defendant filed a motion for "disclosure of exculpatory material." In response thereto, the state furnished a report showing that hair found in the victim's apartment was not that of the defendant, and that samples of dirt found in the apartment were not traceable to him. No contention is made that any exculpatory evidence was withheld.

The evidence at trial was that at about 1:00 a. m. on February 19, 1979, a man entered the victim's apartment, awakened her by putting his hand over her mouth, informing her that he had a gun, and not to scream. He turned her on her stomach, held a pillow over her head, and raped her. When he released the pillow, the victim began screaming and the man departed quickly, leaving behind an item of clothing described as a "tank top" shirt. Defendant's wallet, identified by his mother, was found on the floor, and a piece of paper was also found in the apartment bearing the victim's address and defendant's telephone number.

Connie Riley, a friend of both defendant and his mother testified that between 7:30 and 9:00 a. m. on the same day the offenses were committed, she received a joint telephone call from defendant and his mother. At that time, defendant told her of the commission and method of the rape, the money stolen, the dropping and recovery of a flashlight, and the loss of his wallet, and other facts that could have been known only by the rapist. Connie Riley also discussed the offenses by telephone with defendant's brother.

The defendant filed a notice of alibi, but put on no evidence, choosing to also rest after presentation of the state's case in chief.

In support of his contention that he was denied a fair trial, defendant characterizes the testimony of Deputy Sheriff Johnson at the preliminary hearing as false, and that he suppressed and failed to disclose the evidence, all of which was compounded by the silence of the prosecution. He further asserts that he fully availed himself of the opportunity for discovery afforded by the preliminary hearing. We do not so read the record.

Defense counsel was obviously aware that defendant had allegedly made admissions to Connie Riley since it was he who broached the subject during his examination of Deputy Johnson at preliminary hear-

ing.[2] Counsel then went on to ask what the defendant had said to her. At that point, opposing counsel lodged an objection and the colloquy between the court and both counsel ensued. Thereafter, whether by inadvertence or design, defense counsel did not pursue an answer to the prior question.

■ A fair reading of the testimony of Deputy Johnson does not reveal it as false. Obviously, he did not disclose all that he knew about defendant's inculpatory statements to Connie Riley, but it was not his function, duty, or obligation as a witness to volunteer testimony.[3] On the contrary, it was the responsibility of defense counsel to probe and press the manner and form of the inquiry.[4] Consequently, it is not to be said that Deputy Johnson either suppressed or failed to disclose evidence.

The preliminary hearing apprised defendant of the fact that the state intended to rely upon the testimony of Connie Riley at trial. If he had reason to challenge the veracity of her testimony, it was incumbent upon him to discover the full content of the inculpatory statements he allegedly made to her. This he could have done at the preliminary hearing, by a subsequent interview of the expected witness, or by various other discovery means available to him during the seven-month period that elapsed prior to trial. For reasons best known to the defendant, he undertook no such discovery, nor did he make any *specific* request therefor.

Defendant cites the case of *Brady v. Maryland*[5] as supportive of his position. However, that case is factually different since it involved the suppression of *exculpatory* evidence in the face of a *specific* production request by the defense.

2.  See emphasized excerpts therefrom, *supra*.

3.  *In Re Rosoto*, 10 Cal.3d 939, 112 Cal.Rptr. 641, 519 P.2d 1065 (1974), cert. den. 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974).

4.  *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).

5.  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In the more recent case of *Moore v. Illinois*,[6] the court described the holding in *Brady* as:

> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is *favorable to the accused* and is material either to guilt or to punishment. Important then, are (a) suppression by the prosecution after a request by the defense, (b) *the evidence's favorable character for the defense,* and (c) the materiality of the evidence. These are the standards by which the prosecution's conduct in Moore's case is to be measured. [Emphasis added.]

In *United States v. Agurs*,[7] the court further extended its rulings in *Brady* and in *Moore* by holding that the prosecution has the constitutional duty to *volunteer* obviously *exculpatory* evidence that creates a reasonable doubt of guilt. Nevertheless, for undisclosed evidence to be considered as coming within the purview of the holdings in *Brady, Moore,* and *Agurs,* it must be *exculpatory* in nature.

■ Although the constitutional right of the defendant to a fair trial compels the disclosure of exculpatory evidence material to the preparation of his case,[8] there is "no constitutional requirement that the prosecutor make a complete and detailed accounting to the defense of all police investigatory work on a case."[9] As was also stated in *State v. Horn*,[10]

> Contrary to appellant's claims the State is not constitutionally compelled to "disclose any and all information which may assist said defendant in preparing for trial . . . ."

6.  408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), reh. den. 409 U.S. 897, 93 S.Ct. 87, 34 L.Ed.2d 155 (1972).

7.  427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

8.  *Id.*

9.  *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

10.  101 Idaho 192, 610 P.2d 551 (1980).

In the instant case, defendant's statements were not exculpatory but were *inculpatory* in nature. As such, they were of course not susceptible of an interpretation that would in any way give rise to a reasonable doubt of guilt.[11] Consequently, the prosecution had no constitutional duty to disclose their content.

In further support of his contention that he was denied a fair trial, defendant asserts that he was surprised by the testimony of Connie Riley, and that he was thus unprepared to discredit or rebut it. Defendant advanced the same argument in support of a motion for mistrial, which the trial judge denied.

What has heretofore been said regarding the defendant's failure to exercise reasonable diligence in conducting trial discovery bears directly upon his claim of surprise. Further, the court has broad discretion in determining whether a mistrial should be declared,[12] and the denial of a motion for a mistrial does not constitute an abuse of discretion where no prejudice to the accused is shown.[13] The matter is not dissimilar to that of granting or refusing to grant a new trial. Such lies within the sound discretion of the trial judge and this Court will not reverse his decision thereon in the absence of an abuse of discretion.[14]

Connie Riley's testimony as to defendant's admission of the rape was without prejudicial effect. This is to be seen in that if defendant did in fact have reason to challenge the veracity of Connie Riley, he could easily have done so at trial, either by his own testimony, or that of his mother, who was also present under subpoena as his alibi witness. He chose to do neither, nor did he seek a continuance of trial to overcome the claimed element of surprise.

The judgment of the trial court is affirmed.

STEWART, HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

11. See *State v. Jarrell*, Utah, 608 P.2d 218 (1980); *State v. Adams*, Utah, 583 P.2d 89 (1978); *Ward v. Turner*, 12 Utah 2d 310, 366 P.2d 72 (1961), cert. den. 371 U.S. 872, 83 S.Ct. 122, 9 L.Ed.2d 110 (1962); *Butt v. Graham*, 6 Utah 2d 133, 307 P.2d 892 (1957).

12. *State v. Miles*, Mo., 364 S.W.2d 532, 9 A.L.R.3d 1266 (1963).

13. *Lane v. State*, Del., 222 A.2d 263 (1966).

14. *State v. Conrad*, Utah, 590 P.2d 1264 (1979); *State v. Bundy*, Utah, 589 P.2d 760 (1978).