# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0964** (Brooke County No. 18-F-21)

**Keith Allen Wood,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Keith Allen Wood appeals the November 22, 2021, order sentencing him on two counts of sexual assault in the first degree and two counts of sexual abuse by a guardian.[1] Petitioner's female victim, A.R.R.,[2] was seven years old at the time of the assaults/abuse. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

At petitioner's trial, testimony was produced that petitioner sexually assaulted A.R.R. when the child was alone with petitioner in his house. A jury found petitioner guilty on all counts. The trial court sentenced petitioner to (1) not less than 25 nor more than 100 years in prison and a $5,000 fine on each of the two counts of sexual assault in the first degree, and (2) not less than 10 nor more than 20 years in prison and a $5,000 fine on each of the two counts of sexual abuse by a guardian. The sentences were ordered to run consecutively and to be followed by 25 years of supervised release.

Petitioner now appeals raising seven assignments of error. Petitioner first argues that he was denied his right to a fair trial when the trial court barred the testimony of his expert witness, Donald Kissinger, Ph.D. Petitioner claims Dr. Kissinger would have testified that petitioner did not have a psychological disorder or any sexual interest in children, was not at risk with children, did not fit the psychological profile of a sexual offender, and was at low risk for committing a sexual offense against a child. Petitioner claims this evidence was critical to the jury's ability to assess his credibility and that the jury was instructed that character trait evidence inconsistent with

---

[1] Petitioner appears by counsel William E. Galloway. Respondent appears by Attorney General Patrick Morrisey and Assistant Attorney General Andrea R. Nease Proper.

[2] Because of the sensitive nature of the facts alleged in this case, we use the initials of the affected parties. *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim . . . [is] related to the appellant, we have referred to the appellant by his last name initial." (citations omitted)); *see also* W. Va. R. App. P. 40(e).

the crime charged can give rise to reasonable doubt. The circuit court found Dr. Kissinger's opinions to be irrelevant and inadmissible because they addressed whether petitioner had a proclivity to sexually abuse children in the *future* rather than whether he committed the *past* crimes of which he was charged.

"'The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.' Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995)." Syl. Pt. 9, *Smith v. First Cmty. Bancshares, Inc.*, 212 W. Va. 809, 575 S.E.2d 419 (2002).

We find the circuit court did not abuse its discretion in excluding Dr. Kissinger's testimony. The testimony was not relevant because it went only to petitioner's future potential to sexually assault children and not to his past behavior. As for petitioner's reliance on *State v. Beck*, 167 W. Va. 830, 840, 286 S.E.2d 234, 241 (1981), in support of his claim that a defendant may offer expert character evidence testimony showing that he is not a sexual psychopath, it is misplaced as the *Beck* court was not asked to determine whether proclivity testimony was relevant or admissible. *Id.* at 839-40, 286 S.E.2d at 240-41. Accordingly, we find no error.

In petitioner's second assignment of error, he argues that he was denied his right to a fair trial when the trial court erroneously elevated A.R.R. to a "Super Witness" by instructing the jury, over petitioner's objection, as follows:

> You are instructed that you may find the Defendant guilty of a sexual offense based on the uncorroborated testimony of the complaining witness unless you find the complaining witness is inherently incredible. The Court instructs the jury that inherent incredibility is more than a contradiction and lack of corroboration. Inherent incredibility thus requires a determination by the jury of complete untrustworthiness. The Court instructs the jury that if they believe from the evidence the crimes charged against [petitioner] rests alone on the testimony of the complaining witness, then the jury should scrutinize such testimony with care and caution. You are the sole judge of credibility of each witness.

Petitioner states that the circuit court refused to give a similar instruction in favor of petitioner's testimony.

"[I]f an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise *de novo* review." *State v. Guthrie*, 194 W. Va. 657, 671, 461 S.E.2d 163, 177 (1995). However, "when an objection to a jury instruction involves the trial court's expression and formulation of the jury charge, this Court will review under an abuse of discretion standard." *Id.*

> [W]e review jury instructions to determine whether, taken as a whole and in light of the evidence, they mislead the jury or state the law incorrectly to the prejudice of the objecting party. So long as they do not, we review the formulation of the

2

instructions and the choice of language for an abuse of discretion. We will reverse only if the instructions are incorrect as a matter of law or capable of confusing and thereby misleading the jury.

*Id.* at 671-72, 461 S.E.2d at 177-78. We find the challenged instruction to be a correct statement of the law in light of the jury instructions in *State v. McPherson*, 179 W. Va. 612, 371 S.E.2d 333 (1988), and *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011), on which the trial court relied. In *McPherson*, we approved an instruction that provided:

> [T]he Court instructs the jury that if you believe from the evidence in this case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, . . . then you should scrutinize her testimony with care and caution; although a conviction of a sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible.

179 W. Va. at 616, 371 S.E.2d at 337. Similarly, in *Haid*, we approved the following instruction:

> A conviction for the crimes charged by the indictment may be obtained or rest on the uncorroborated testimony of the alleged victim, unless you determine that such testimony is inherently incredible. The term "inherently incredible" means more than a contradiction, inconsistency or lack of corroboration. For the jury to decide that testimony is inherently incredible, you must decide that there has been a showing of complete untrustworthiness. In this regard, you should scrutinize her testimony with care and cause.

*Id.* at 516, 721 S.E.2d at 535. The *Haid* Court found that:

> The instruction in *McPherson* and the instruction given in the case at bar are quite similar. Both correctly state that a conviction for the sexual offenses so charged may be had on the uncorroborated testimony of the victim, unless the testimony of the victim is inherently incredible. Both instructions direct the jury to assess the credibility of the prosecuting witness with care and caution. The circuit judge's decision to instruct the jury, without the addition of the language as requested by the petitioner, was not an abuse of discretion, inasmuch as the instruction was a correct statement of the law, and more particularly, when we consider the entirety of the jury charge as a whole.

*Id.* at 521, 721 S.E.2d at 540. Here, because the trial court's instruction was comparable to those upheld in *McPherson* and *Haid,* we find no error.

In his third assignment of error, petitioner again challenges the trial court's denial of his request for a reasonable doubt jury instruction ending with the phrase, "the reasonable doubt requirement is met if the evidence is such that the finding of guilt is based on a moral certainty." Petitioner cites to *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967), which provides that "the reasonable doubt requirement is met if the evidence is such that the finding of guilt is based

on moral certainty. 30 Am. Jur.2d, Evidence, Section 1125." 151 W. Va. at 805, 155 S.E.2d at 855. The trial court rejected this language claiming that the phrase "moral certainty" was ambiguous. It specifically precluded petitioner's counsel from using the term "moral certainty" in closing argument.

We find no error as the instructions given by the trial court sufficiently defined reasonable doubt and were not misleading. We have said:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

*Guthrie*, 194 W. Va. at 169-70, 461 S.E.2d at 663-64, Syl. Pt. 4. Here, the trial court found that the addition of the phase "moral certainty" would create "a whole other level of ambiguity for this jury to deal with." Importantly, the trial court instructed the jury that petitioner "is never to be convicted on mere suspicion or conjecture" and, if in doubt, "the jury should of course adopt the conclusion of innocence." The court further instructed that "guilt must be established by strong and sufficient evidence to remove from the minds of the jury every reasonable doubt to the contrary." These instructions were correct as a matter of law. Thus, the court's decision not to give petitioner's requested reasonable doubt instruction did not "seriously impair" his ability to present his defense.

In his fourth assignment of error, petitioner argues that he was denied the right to a fair trial when the trial court denied his request to redact hearsay statements made by A.R.R. and her father to medical personnel that were recorded in A.R.R.'s medical record. For instance, the nurse who examined A.R.R. wrote the examination was "concerning" without further elaboration. Petitioner argues that those statements were not necessary for treatment purposes and, therefore, the medical records exception to the hearsay rule, found in West Virginia Rule of Evidence 803(4), did not apply.

We disagree and find that the trial court acted within the bounds of its discretion. *Smith*, 212 W. Va. at 812, 575 S.E.2d at 422, Syl. Pt. 9. The trial court properly admitted the victim's unredacted medical records under the business and medical records exceptions found in Rule 803(4). That exception allows the admission of records containing a "statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause[.]." Further, in Syllabus Point 6 of *State v. Payne*, 225 W. Va. 602, 694 S.E.2d 935 (2010), we noted that such statements in medical records are admissible:

When a child sexual abuse or assault victim is examined by a forensic nurse trained in sexual assault examination, the nurse's testimony regarding statements made by the child during the examination is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive for making the statement was consistent with the purposes of promoting treatment and the content of the statement was reasonably relied upon by the nurse for treatment. In determining whether the statement was made for purposes of promoting treatment, such testimony is admissible if the evidence was gathered for a dual medical and forensic purpose, but it is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

Additionally, Rule 803(6) provides that a record of an "act, event, condition, opinion, or diagnosis" is admissible if

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The statement-containing records petitioner cites fall clearly within these hearsay exceptions. The examination occurred for the purpose of treatment, i.e., A.R.R. was sent to the hospital for a physical examination in light of her claim of sexual abuse, and the hospital records document contemporaneous statements by those who examined A.R.R. regarding their diagnosis. Moreover, the trial court noted that, for the medical documents to be complete, they needed to be admitted in their entirety. Under Rule 106 of the West Virginia Rules of Evidence, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party my request the introduction, at the time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Thus, under Rule 106, the court properly found that the records were admissible in their entirety. Therefore, we find no error.

In his fifth assignment of error, petitioner argues that he was denied his right to a fair trial due to the trial court's plain error in permitting "large, burly bikers wearing their BACA ("Bikers Against Child Abuse") insignia" to sit in the courtroom in view of the jury. Petitioner contends that the bikers' presence likely influenced the jury and indirectly labeled him as a child sex offender.

5

It is within a trial court's discretion to determine, under a clear and convincing standard, whether or not a jury was subjected to an improper influence that affected their verdict. *See* Syl. Pt. 1, *Lister v. Ballard*, 237 W. Va. 34, 784 S.E.2d 733 (2016). Petitioner presents no evidence that the jury was unduly influenced by the presence of the bikers. Further petitioner failed to object to their presence or move that the bikers be excluded from the courtroom. Accordingly, we review this assignment of error under a plain error analysis. "To trigger application of the plain error doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Petitioner fails to satisfy this standard. "Where a defendant moves to exclude members of the public from observing his jury trial, the ultimate question is whether, if the trial is left open, there is a clear likelihood that there will be irreparable damage to the defendant's right to a fair trial." Syl. Pt. 7, *State v. Richey*, 171 W. Va. 342, 298 S.E.2d 879 (1982). Petitioner fails to show how the bikers' mere presence impeded his right to a fair trial. Moreover, it was petitioner who drew attention to the bikers when his counsel asked the victim and her mother if they knew the bikers, and twice pointed the bikers out to the jury. Thus, petitioner cannot show, under a plain error standard, that the bikers' presence in the courtroom affected his substantial rights or seriously affected the fairness, integrity, or public reputation of his judicial proceedings.

Petitioner's sixth assignment of error raises a double jeopardy challenge. Petitioner's first trial was declared a mistrial due to his counsel's improper comments on opening. Thereafter, the trial court denied petitioner's motion to dismiss all charges on double jeopardy grounds. "[T]he circuit court's decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Thornton*, 228 W.Va. 449, 459, 720 S.E.2d 572, 582 (2011).

West Virginia's double jeopardy clause provides, in part, that "[n]o person shall be . . . twice put in jeopardy of life or liberty for the same offence." W. Va. Const. art. III, § 5. A trial court may grant a mistrial, and avoid the double jeopardy clause, only if there is a "manifest necessity" to terminate the trial. *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983).

> The term "manifest necessity' covers a broad spectrum of situations which in some instances bear little relationship to the literal meaning of this phrase. This is particularly true in cases where the conduct of one party at trial has created sufficient jury prejudice toward the other that it is unfair to continue with the trial and a mistrial is warranted.

*Keller v. Ferguson,* 177 W. Va. 616, 620, 355 S.E.2d 405, 409 (1987). Here, petitioner's right against double jeopardy was not violated because, at his first trial, his counsel created a manifest necessity for the mistrial during his opening statement when he repeatedly referenced evidence that the trial court had clearly ruled inadmissible. On this record, we find no error in the trial court's refusal to dismiss petitioner's charges on double jeopardy grounds before his second trial.

In his seventh and final assignment of error, petitioner argues that the trial court abused its discretion in sentencing him to consecutive sentences and in denying his request for probation.

6

Sentencing orders are reviewed "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). Sentences are not subject to appellate review "if within statutory limits and if not based on some [im]permissible factor[.]" Syl. Pt. 4, in part, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Sexual assault is a violent crime. *See State v. Hoyle*, 242 W. Va. 599, 615, 836 S.E.2d 817, 833 (2019). Moreover, petitioner's victim was a seven-year-old child. Finally, under West Virginia Code § 61-11-21, the presumption is that criminal sentences will run consecutively. Given petitioner's heinous acts against a child, we find no abuse of discretion in the court's denial of probation and imposition of consecutive sentences.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Wooton, Justice, dissenting:

I would have set this case for oral argument on the Rule 19 docket to thoroughly examine the following three assigned errors raised by petitioner Keith Allen Wood: 1) whether the circuit court erred in excluding petitioner's expert; 2) whether the circuit court erred in giving a "super witness" instruction over petitioner's objection; and 3) whether the circuit court committed plain error in allowing the courtroom to be filled with bikers wearing BACA ("Bikers Against Child Abuse") buttons. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted – not a memorandum decision. Accordingly, I respectfully dissent.

First, petitioner argues that the circuit court erred in excluding the testimony of his expert witness, Donald Kissinger, Ph.D., a psychiatrist. Dr. Kissinger would have testified that his examination of petitioner showed that petitioner did not have a psychological disorder or any sexual interest in children, was not at risk with children, did not fit the psychological profile of a sexual offender, and was at low risk for committing a sexual offense against a child. Petitioner argued that he had a right to offer evidence of an inconsistent character trait, *see* W. Va. R. Evid. 404(a)(2)(A),[3] and the right to an instruction that such evidence can give rise to reasonable doubt.

_____

[3] West Virginia Rule of Evidence 404(a)(2)(A) provides that "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]" *Id.*; *see* Syl. Pt. 7, *State v. Benny W.*, 242 W. Va. 618, 837 S.E.2d 679

(Continued . . .)

7

Petitioner argues that in this case, where the victim's testimony was uncorroborated, Dr. Kissinger's testimony was a critical linchpin of the defense.

In *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981), we recognized the admissibility of a defendant's psychological examination indicating that it would be unlikely petitioner would have committed the charge sexual offense, characterizing this evidence as a "species of character testimony." *Id*. at 839 n.8, 286 S.E.2d at 241 n.8. We stated that

> [t]he trial court's initial decision to permit the psychological testimony was apparently based on authority that permits psychological testimony in regard to whether the defendant's psychological profile would suggest that he has predilections to commit the specific crime charged. *See generally*, C. McCormick, *Evidence* Chapter 17 (2d ed. 1972). This type of evidence would appear to be mainly confined to sexually deviant crimes. The leading case is *Freeman v. State*, 486 P.2d 967 (Alaska 1971):
>
>> "It appears to be uniformly accepted that psychiatric evidence showing that an individual accused of sexually deviant misconduct is not a sexual psychopath should properly be regarded to be character evidence. See *People v. Spigno*, 156 Cal.App.2d 279, 319 P.2d 458 (1957); *State v. Cypher*, 92 Idaho 159, 438 P.2d 904, 916 (1968); *State v. Sinnott*, 24 N.J. 408, 132 A.2d 298, 304–311 (1957); *Ward v. Turner*, 12 Utah 2d 310, 366 P.2d 72, 74 (1961); *State v. Bromley*, 72 Wash.2d 150, 432 P.2d 568 (1967); *See also* Curran, [Expert *Psychiatric Evidence of Personality Traits*, 103 U.Pa.L.Rev. 999 (1955) ] *supra* note 4; Falknor & Steffan, [*Evidence of Character: From the "Crucible of the Community" to the "Couch of the Psychiatrist*, 102 U.Pa.L.Rev. 980 (1954) ] *supra* note 4; and Deering's Calif.Ev.Code Ann. § 1102, at 9 (1966) (Law Revision Commission comment)." 486 P.2d at 972 note 8.

*Beck*, 167 W. Va. at 839 n.8, 286 S.E.2d at 241 n.8.

In the instant case, the circuit court excluded the expert's testimony on the ground that the testimony went solely to the possibility of future harm and was irrelevant to the question of whether he had perpetrated the offenses charged in the indictment. In my view, the court's reasoning was illogical and misguided. This testimony was highly probative of petitioner's defense, which was

---

(2019) ("Under Rule 404(a)(2)(A), of the West Virginia Rules of Evidence, a defendant in a criminal prosecution may offer evidence of the defendant's pertinent character trait.").

that he was not a pedophile and did not assault and abuse this child. *See State v. Derr*, 192 W. Va. 165, 178, 451 S.E.2d 731, 744 (1994) ("Rule 401 defines relevant evidence in terms of probability. The relevant inquiry is whether a reasonable person, with some experience in the everyday world, would believe that the evidence might be helpful in determining the falsity or truth of any fact of consequence."). The expert's testimony would have assisted the trier of fact in evaluating petitioner's defense, and the probative value of the evidence was not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." W. Va. R. Evid. 403.

Second, petitioner argued that the circuit court erred in giving the jury a "super witness" instruction over his objection. The instruction given to the jury was as follows:

> You are instructed that you may find the Defendant guilty of a sexual offense based on the uncorroborated testimony of the complaining witness unless you find the complaining witness is inherently incredible. The Court instructs the jury that inherent incredibility is more than a contradiction and lack of corroboration. Inherent incredibility thus requires a determination by the jury of complete untrustworthiness. The Court instructs the jury that if they believe from the evidence the crimes charged against [petitioner] rests alone on the testimony of the complaining witness, then the jury should scrutinize such testimony with care and caution. You are the sole judge of credibility of each witness.

This instruction was based upon the law enunciated by Justice Miller in syllabus point five of *Beck*: "A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." 167 W. Va. at 831, 286 S.E.2d at 236, Syl. Pt. 5.

Subsequently, this Court revisited the *Beck* instruction in *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011), wherein we stated that

> [w]hile the instruction does not constitute prejudicial error under the particular circumstances of this case, we do feel that the following instruction is a better statement of law in sexual assault cases where the victim's testimony is uncorroborated:

> > The court instructs the jury that the defendant may be convicted on the uncorroborated testimony of the alleged victim in this case. However, you should scrutinize the alleged victim's testimony with care and caution. Although a conviction of a sexual offense may be obtained on the uncorroborated testimony of the alleged victim, you must be convinced beyond a reasonable doubt that the defendant is guilty. If you are not convinced beyond

9

> a reasonable doubt of the defendant's guilt, based upon the uncorroborated testimony of the alleged victim, then you shall find the defendant not guilty.

*Id*. at 522, 721 S.E.2d at 541. Under the facts and circumstances of this case, where a *Beck* instruction was given rather than the preferred instruction established in *Haid*, I believe a closer examination by this Court is warranted into the issue of possible prejudice to petitioner. *See id*.

Finally, petitioner argues that he was denied his right to a fair trial when the circuit court allowed bikers wearing BACA ("Bikers Against Child Abuse") insignia to sit in the courtroom in the jury's view. On appeal, petitioner argues that the bikers' presence indirectly labeled him as a child sex offender and improperly influenced the jury, a claim this Court can only address on plain error because petitioner failed to object below to the presence of the bikers. In this regard, "[t]o trigger application of the plain error doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Our law provides that "[w]here a defendant moves to exclude members of the public from observing his jury trial, the ultimate question is whether, if the trial is left open, there is a clear likelihood that there will be irreparable damage to the defendant's right to a fair trial." Syl. Pt. 7, *State v. Richey*, 171 W. Va. 342, 298 S.E.2d 879 (1982). I strongly disagree with the majority's determination that the presence of the biker's wearing BACA insignias failed to constitute plain error as it did not cause "irreparable damage" to petitioner's right to a fair trial. By allowing a group of people to sit in the courtroom and lobby for a conviction – which is exactly what occurred – the circuit court seriously jeopardized petitioner's right to be tried by jurors who would approach their task with open minds, uninfluenced by outside messaging. This was plain error that undoubtedly affected petitioner's substantial rights and seriously affected the fairness, integrity, or public reputation of his judicial proceedings. *See Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, Syl. Pt. 7.

For all the foregoing reasons, I respectfully dissent.