721 S.E.2d 529

**STATE of West Virginia, Plaintiff
Below, Respondent,**

v.

**Tracy L. HAID, Defendant
Below, Petitioner.**

No. 35680.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 7, 2011.

Decided Nov. 23, 2011.

George J. Consenza, Esq., Parkersburg, WV, for Petitioner.

Darrell V. McGraw Jr., Esq., Attorney General, Thomas W. Rodd, Esq., Assistant Attorney General, Charleston, WV, for Respondent.

PER CURIAM:

The instant action is before this Court upon the appeal of Tracy L. Haid (hereinafter "petitioner") of a jury conviction for two counts of sexual assault in the third degree, commonly referred to as statutory rape. On November 16, 2009, the petitioner was sentenced to one to five years in the penitentiary on each count, said sentences to run concurrently. The petitioner was also ordered to register on the sexual offender registry for a period of 10 years, and was fined $5,000. The petitioner alleges that the lower court erred in applying the rape shield statute, in failing to grant a motion for judgment of acquittal and by improperly instructing the jury. We have carefully reviewed the record, the parties' briefs and arguments before this Court and affirm for the reasons cited herein.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner, Tracy L. Haid, was 39 years of age when he was named in a six-count indictment alleging sexual offenses involving the then 15–year–old victim, S.S.[1] The indictment alleged that the petitioner committed sexual assault in the second degree in Counts 1, 2 and 3, and sexual assault in the third degree in Counts 4, 5 and 6, on or about February 20, 2007, in Jackson County. W. Va.Code § 61–8B–4 (1991) defines sexual assault in the second degree as follows:

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; or

(2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

W. Va.Code § 61–8B–5 (2000) defines sexual assault in the third degree as follows:

(a) A person is guilty of sexual assault in the third degree when:

(1) The person engages in sexual intercourse or sexual intrusion with another person who is mentally defective or mentally incapacitated; or

(2) The person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant.

The petitioner denied the charges against him, and the case proceeded to trial by a jury on September 8, 2009. Evidence adduced at trial showed that S.S. and the petitioner first met on the Internet-based messaging service Yahoo!. S.S. had posted a profile identifying herself as an 18–year–old high school student who went by the screen name of "girl-rocks_hard" who was looking for a long-term relationship. The petitioner's Yahoo! profile indicated that he was over the age of 18 years and utilized the screen moniker of "wvmtman." For a period of six months prior to February 20, 2007, the petitioner and S.S. engaged in a series of computer-based discussions using Yahoo!'s chat room[2] system, specifically the chat room known as "adult romance." In order to participate in activities in the adult romance chat room, Yahoo!'s terms of service[3] require users to be over the age of 18 years. According to the victim, the chats[4] initially were non-sexual in nature but after a period of approximately two months the chats took on a decidedly adult tone, including discussions about prior sexual experiences and questions about personal sexual preferences.

After about six months of chatting, the petitioner and S.S. decided that they wanted to expand the nature of their relationship by meeting in person. Arrangements were made for the petitioner and S.S. to meet "in real life." The petitioner called the victim on her cell phone to confirm where to meet. The agreement was made to meet along the road near the victim's house in Mason County. At approximately 5:30 p.m. the petitioner picked up S.S. along the road. From there they traveled to the petitioner's home in

---

**1.** Inasmuch as the victim in this case was a minor, this Court will continue to follow the practice of using initials to identify the parties in cases with sensitive facts. *See In re Jeffrey R.L.,* 190 W.Va. 24, 26 n. 1, 435 S.E.2d 162, 164 n. 1 (1993).

**2.** A chat room is a site on the Internet where people can communicate simultaneously with each other using their computers. Chat rooms are usually organized by areas of interest.

**3.** Terms of service are the rules and regulations governing users of the service.

**4.** For the purpose of this opinion, the word "chat" pertains to communication over the Internet and does not necessarily mean that the participants were in the same room or were even present at the same time within the traditional definition of "chatting."

Jackson County. The petitioner testified that he stopped at his house to pick up his guitar, as he was taking the victim to band practice with him. The victim testified that once she entered the petitioner's home, she was repeatedly offered beer, which she refused. The victim testified at trial that the petitioner then began to kiss and fondle her over her protests. The victim testified that the petitioner eventually pulled her by her arm and dragged her into a bedroom, where he continued to make sexual advances against S.S.'s wishes. The petitioner removed the victim's pants and performed oral sex on her and then had anal intercourse with her. Afterward, Mr. Haid drove the victim back to Mason County, dropping her off along the roadway near her home.

The victim did not immediately report the petitioner's actions to anyone. On March 23, 2007, S.S. told members of her church what had transpired between her and the petitioner. Law enforcement was contacted and an investigation was launched into the accusations of sexual assault. On June 24, 2008, an indictment was returned accusing the petitioner of committing six counts of sexual assault.

The petitioner sought a jury trial, which commenced on September 8, 2009. The petitioner's defense at trial to the charges facing him was that the acts did not happen. He did not raise any issue regarding misunderstanding S.S.'s true age, or any misrepresentations thereof. He testified that he ventured into the Yahoo! chat room to find people he could meet in his local area. Mr. Haid testified that he checked out the victim's profile when he realized that she lived near him and determined that she was 18 years of age. He stated that he informed S.S. that he was 39 years of age, had two children and shared other personal information, but he denied any "dirty talk" with the victim.

Regarding the meeting, the petitioner testified that he noticed that S.S. was heavier than she appeared on her profile when he picked her up. The petitioner stated that he drove her to his house to pick up his guitar for band practice. He testified that while he was driving her in his car, the victim began

receiving phone calls from someone. The petitioner stated that he assumed the calls were from friends but later found out they were from a boyfriend. He then questioned S.S. about her age and stated she admitted that she was 16 years of age. The petitioner then made her leave the house with him. They then got back in the car and he drove her to her boyfriend's house. He denied any sexual contact whatsoever with S.S.

Also testifying at trial was a law enforcement officer, who spoke of the investigation into these allegations. There was no forensic medical evidence available at trial because the victim did not immediately report the sexual assault. There was also no evidence introduced that was obtained from the seizure of Mr. Haid's computer. The computer used by the victim was not examined.

At trial, the appellant sought to question the victim regarding her previous sexual experiences, specifically regarding anal intercourse. The circuit court prohibited questions along this line, finding that the rape shield statute did not authorize inquiry of this nature. The petitioner argued as follows:

DEFENSE: Your Honor, the witness has testified that her jeans were pulled down. She told Trooper Marion she didn't know how far. She's testified today that they were around her ankles, and that she was bent over the bed, and then without lubrication, Mr. Haid anally entered her.

I understand that the rape shield statute does not allow me to ask a victim about prior sexual experiences, unless they were with the defendant. However, I would like permission to inquire of this witness about her past experience with anal intercourse, since I believe——you know, it's——since I believe that it would be an issue for the jury that it might be physically impossible to have this kind of intercourse with her, with her jeans wrapped around her legs.——

THE COURT: Of course, that hasn't been established. That was at an earlier segment of the incident. It has not been establish (sic) in the evidence that her

jeans and her underpants remained at her ankles at the time.

DEFENSE: She testified during direct examination just today.

THE COURT: She did, but at the earlier part if it, during the oral sex. It has not been established——

DEFENSE: Okay. Well assuming——

THE COURT: It's not been established.

DEFENSE: Assuming that [it] is established, is the Court going to allow me to inquire about that ? About that——and I have a case for the Court, *State v. Guthrie*——the Court is probably familiar with it——and it talks about the rape shield statute.

And again, the Court does have the discretion to allow this type of evidence if the Court believes it to be appropriate. Let me find the——it says that Rule 40——it talks about the rape shield statute, and then it says Rule 404–A–3 of the West Virginia Rules of Evidence, provide the express exception to the general exclusion of evidence coming within the scope of a rape shield statute. The exception provides for the admission of prior sexual conduct of a rape victim when the Court——when the trial court determines *in camera*, that the evidence is specifically related to the act or acts for which the defendant is charged, and necessary to prevent manifest injustice.

THE COURT: What is the citation?

DEFENSE: It is *State v. Guthrie*, 205 West Virginia 326, 518 S.E.2d 83 [ (1999) ].

THE COURT: 205 West Virginia 326 [518 S.E.2d 83]?

DEFENSE: Yes, sir. It is a 1999 case. And while I don't——

THE COURT: And your theory is, absent some sort of sexual experience in that specific sex act, it is not possible to——

DEFENSE: Well, then I——

THE COURT: ——to consummate this particular sex act?

DEFENSE: If you have your pants down around your ankles, the jury can infer——and there is no lubrication——that

the jury, I think, can infer that yeah, that it is not possible.

Now if she's had experience with anal intercourse before, I would imagine that it might be.

THE COURT: Oh Counsel, I think you are leaping to some significant factual assumptions. And I'll read your case, but I'm not inclined to accept your argument at this point.

DEFENSE: Okay.

THE COURT: What says the State about it?

STATE: Oh, absolutely we resist, your Honor. Absent some sort of Dr. Ruth medical evidence that that could or could not happen, the jury can infer from her testimony what credibility they want to do. We don't need to go out on a fishing expedition that concerns a 16–year–old's sex habit.

THE COURT: I will read your case. I don't think it's been established in the evidence that at the time of the incident involving anal intercourse her jeans and her underpants were around her ankles. I know that is what the testimony was in an earlier part of the episode, described by the witness, but I'm not sure at that. And even if the testimony is that, seems like that is going to open up a whole lot in this trial that really is not necessary to present an adequate defense.

The next day, the Court ruled that this line of questioning was not permissible, stating:

And the reason is, I think the premise for it is entirely speculative, and I don't think it is supported by the evidence that has been produced so far, and I don't see how delving into this young lady's previous sexual history would help the jury understand or prevent manifest injustice to Tracy Haid, so I'm going to deny your motion to cross-examine what is barred by the rape shield statute.

I did read your case, and I looked at the rule. I just don't think that the evidentiary predicate for the exception is met by the evidence in this case. So your exception to the Court's ruling is noted and satisfied.

No proffer of the questions was preserved in the record.

At the close of the State's case, the petitioner moved for judgment of acquittal, arguing that the state had failed to produce sufficient evidence to support the case going to the jury. The circuit court denied the motion.

Prior to closing arguments, the circuit court met with the parties to review the jury charge and the proposed jury instructions. The petitioner requested an additional instruction to be read in conjunction with an instruction regarding convictions based upon the uncorroborated testimony of a sexual assault victim. The instruction as given was as follows:

A conviction for the crimes charged by the indictment may be obtained or rest on the uncorroborated testimony of the alleged victim, unless you determine that such testimony is inherently incredible. The term "inherently incredible" means more than a contradiction, inconsistency or lack of corroboration. For the jury to decide that testimony is inherently incredible, you must decide that there has been a showing of complete untrustworthiness. In this regard, you should scrutinize her testimony with care and cause.

The petitioner's proposed additional instruction read as follows: However, you do not need to find S.S.'s testimony inherently incredible to find the defendant not guilty.

The State objected to the proposed instruction, arguing that the burden of proof was adequately explained throughout the entire charge to the jury and that the instruction as proposed was repetitive, duplicitous and unnecessary. The circuit court denied the proposed instruction, stating that throughout the entirety of the charge, the jury was reminded of the appropriate burden of proof. The exchange between the court, the State and the petitioner was follows:

DEFENSE: Well I just——on page 6, when you talk about——the second full paragraph——a conviction for the crimes charged by the indictment may be obtained or rest on the uncorroborated testimony of the alleged victim, unless you determine that such testimony is inherently incredible. The term "inherently incredible" means more than a contradiction, inconsistency or lack of corroboration. For the jury to decide that testimony is inherently incredible, you must decide that there has been a showing of complete untrustworthiness. In this regard, you should scrutinize her testimony with care [and] caution." And then I would like to add "However, you do not need to find [victim's name]'s testimony inherently incredible to find the defendant not guilty.

THE COURT: Any reason why that shouldn't be done?

STATE: I am going to object to it, the burden is put throughout the charge as to what it is and if there is even a finding there. Just because you find the defendant not guilty doesn't mean the defendant is innocent, and I believe that is just repetitive and duplicitous, and puts inherently more weight on that, putting it there, than it does when it is contained in the rest of the charge your honor.

DEFENSE: I think it is confusing the way it is and that the jury could think, "Uh-oh, wait a minute, I have to find her inherently incredible before I find this guy not guilty" so.

THE COURT: I think the charge adequately describes the State's burden of proof, over and over and over again. This instruction is kind of textbook instruction.

DEFENSE: Okay.

THE COURT: Surely you've seen this before. Have you not seen this before?

DEFENSE: I've seen it before.

THE COURT: Okay. All right. I understand your argument. But I think you are reading too much into that——

DEFENSE: Okay.

THE COURT: ——because——

DEFENSE: Lawyers sometimes do.

THE COURT: Because, I mean, throughout this charge, the jury is continually reminded that they cannot find this man guilty unless they're convinced of his

guilt beyond a reasonable doubt. So I am not going to change the charge....

The specific relevant portion of the charge as read was as follows:

A conviction for the crimes charged by the indictment may be obtained or rest on the uncorroborated testimony of the alleged victim in this case, [victim's name], unless you determine that such testimony is inherently incredible. The term "inherently incredible" means more than a contradiction, inconsistency or lack of corroboration. For the jury to decide the testimony is inherently incredible, you must decide that there has been a showing of complete untrustworthiness. In this regard you should scrutinize her testimony with care and caution.

The jurors were instructed not to single out any one instruction in the court's general charge. The court additionally instructed them on the presumption of innocence, the state's burden of proof and the requirement of finding the petitioner guilty beyond a reasonable doubt. The credibility of witnesses was covered in detail in the charge to the jury, including the definition of credibility as "the truthfulness or lack of truthfulness of a witness."

The jury deliberated and returned not guilty verdicts of the second degree sexual assault charges contained in Counts 1, 2 and 3 of the indictment, but convicted the petitioner on Counts 4 and 5 of sexual assault in the third degree. The petitioner was acquitted of the third degree sexual assault charge in Count 6 of the indictment.

The petitioner filed a post-trial motion for judgment of acquittal, alleging that the evidence did not support the conviction and that the verdict was inconsistent with itself by the acquittals on some counts and the conviction on two counts. The petitioner also continued to argue that the testimony of the victim was incredible, that there was no medical evidence supporting her contentions and that there was insufficient evidence in support of the convictions. The trial court denied this motion.

On November 9, 2009, the petitioner was sentenced an indeterminate term of not less than one year nor more than five years in the state penitentiary on each count of conviction, said sentences to run concurrently. In addition, the petitioner was required to place his name on the sexual offender registry and to pay a fine of $5,000. From this order the petitioner brought the present appeal.

## II.

### STANDARD OF REVIEW

The case at bar presents three distinct questions with differing standards of review of this Court.

■ Whether the circuit court properly ruled on the admission of evidence is reviewed deferentially. "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 1, *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999).

■ Whether the circuit court properly ruled on the petitioner's motion for judgment of acquittal is reviewed *de novo*, based upon the sufficiency of the evidence. *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). As this Court has further explained:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ In regard to whether the circuit court erred in failing to give a proffered instruction, this Court has stated that the standard of review is deferential. In Sylla-

bus Point 4 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163, we stated:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

With these standards of review in mind, we review the petitioner's conviction.

## III.

### DISCUSSION

The petitioner's first assignment of error relates to the circuit court not allowing inquiry into the victim's previous sexual experience. While no proffer was made of the questions that the petitioner wanted to make, he argues on appeal that S.S. placed her previous sexual contact, or lack thereof, in issue by describing the acts that allegedly took place between her and the petitioner. He argues that the testimony of the victim was not credible, and reasonable inquiry into her past would have proved how incredulous her testimony was.

West Virginia's rape shield statute prohibits questioning of sexual assault complainants along these lines. The pertinent part of our statute, W. Va.Code § 61–8B–11 (1986) states as follows:

(a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evi-

dence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, That such evidence heard first out of the presence of the jury is found by the judge to be relevant.

(b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

The proposed inquiry of the petitioner appears to fly directly in the face of the rape shield statute. The petitioner's argument that when the victim identifies the type of a sexual assault which gives rise to a prosecution, that then opens up the door to questions of this nature is particularly insensitive to the purpose of this statute. Other than conjecture as a possible justification for this inquiry, there is little else in support of what the State correctly opined was a "fishing expedition" about the 16–year–old victim's sexual habits.

In Syllabus Point 6 of *Guthrie, supra*, we held:

The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

■ Even without the proffered evidence, as is the case here, our review of the lower court's decision to allow questioning of the victim about her prior sexual experience is deferential. We conclude that the circuit court did not err in denying the petitioner the opportunity to examine S.S. about her prior sexual experience, or lack thereof.

■ The petitioner next posits that the circuit court erroneously denied his motions for judgment of acquittal, made at the close of the State's case in chief and after the jury verdict was rendered. As we have often stated, he who challenges the sufficiency of the evidence assumes a significant burden. We have held in Syllabus Point 3 of *Guthrie*,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Moreover,

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *Guthrie*.

■ The petitioner's arguments in support of his contentions that there was insufficient evidence to support the guilty verdict consist of nothing more than a rehashing of his arguments to the jury. He submits that the testimony of the victim was unbelievable and incredible. He argues that there was no medical evidence in support of the accusations of sexual assault. He submits that the contradictions between his testimony and that of the victim were further evidence of her lack of credibility.

■ The petitioner also argues that the jury's verdicts were inherently inconsistent with one another. He submits that it is impossible to reconcile the conviction on two courts of statutory rape with the acquittal on the third count, as well as the acquittal on the three counts of second degree sexual assault. The State counters that there was ample evidence presented during the trial that if believed by the jury would support the petitioner being convicted.

Viewing the record in the light most favorable to the State, we believe that the petitioner's arguments are wholly without merit. The jury obviously believed the victim's testimony, and disbelieved the petitioner's recounting of the events of February 20, 2007. We do not believe that the acquittal on four counts, and conviction of the remaining two counts, is indicative of anything other than that the jury diligently sifted through the conflicting testimony and properly rendered its decision. We believe that there was sufficient information for a rational jury to determine that the State had proven the petitioner's guilt of the sexual offenses so charged beyond a reasonable doubt. For these reasons we find no merit to the arguments of the petitioner.

■ The final issue before this Court is whether the circuit court properly instructed the jury as a whole. The petitioner had requested that an additional instruction regarding the credibility of the victim be read to counter the instruction that the jury need not find S.S.'s testimony inherently incredi-

**520**

ble to return a guilty verdict. The instruction at issue which was given to the jury was:

A conviction for the crimes charged by the indictment may be obtained or rest on the uncorroborated testimony of the alleged victim in this case, [victim's name], unless you determine that such testimony is inherently incredible. The term "inherently incredible" means more than a contradiction, inconsistency or lack of corroboration. For the jury to decide the testimony is inherently incredible, you must decide that there has been a showing of complete untrustworthiness. In this regard you should scrutinize her testimony with care and caution.

The petitioner requested the addition of the following sentence: However, you do not need to find S.S.'s testimony inherently incredible to find the defendant not guilty. The petitioner opined that the instruction as given, without his addition, was confusing to the jury.

Our review of whether the jury was properly instructed is deferential. We review the entire jury charge, not merely an isolated instruction, mindful that the entire charge must accurately reflect our law.

 The isolated instruction contained in the jury's charge appears to come from the case of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). In *Beck*, we addressed the concerns of a criminal defendant facing sexual assault who challenged this conviction on the grounds that there was no corroboration of the complaining witness. The accuser was a 10-year-old child who testified at trial that the defendant committed certain sexual acts upon her. The State's only other witness was the child's mother, who testified as to what her child told her. There was no further direct evidence regarding the event in question. The defendant acknowledged that prior decisions of this Court supported the notion that corroboration of the testifying witness' account of the sexual assault has generally not been required. *See, e.g.*, Syllabus Point 4, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979) ("A conviction for rape may be had on the uncorroborated testimony of the female, and unless her testimony is inherently incredible her credibility is a ques-

tion for the jury.") and also *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944); *State v. Golden*, 90 W.Va. 496, 111 S.E. 320 (1922); *State v. Rice*, 83 W.Va. 409, 98 S.E. 432 (1919). However, the defendant in *Beck* argued that in cases such as his where the prosecuting witness is immature and the charges arose in the context of a family dispute, there should be a requirement for some corroboration. This Court declined to require corroboration of the victim's allegations, holding that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syllabus Point 5, *Beck*.

The *Beck* holding was later applied by this Court in *State v. Barker*, 178 W.Va. 736, 364 S.E.2d 264 (1987). In that case, the defendant faced a charge of first degree sexual assault of a 10-year-old child. In its case in chief, both the victim and a medical expert testified that no physical evidence of penetration was found upon examination of the child. The defendant argued that based upon the lack of physical evidence to corroborate or support the child victim's testimony, there was insufficient evidence that a sexual act had occurred and that he was entitled to a judgment of acquittal.

More recently, this Court has reviewed the *Beck* holding in the per curiam opinion in *State v. McPherson*, 179 W.Va. 612, 371 S.E.2d 333 (1988). In *McPherson*, the defendant was indicted and charged with sexual assault in the second and third degrees. Similar to the case at bar, the defendant was acquitted of the more serious second degree sexual assault charges and was convicted of statutory rape. The victim in *McPherson* was 14 at the time of the incident; the defendant was 20. In a one-day trial, the State called the victim as a witness during the trial as well as her friend, M.B., who could place the victim in the defendant's trailer at the time of the incident. Unlike the case at bar, there were forensic samples collected a short time after the victim disclosed what had happened to her, but the test results were negative for foreign tissue, blood specimens, semen or pubic hair.

There was also nothing of evidentiary value on the victim's clothing.

McPherson moved for judgment of acquittal based upon insufficiency of the evidence. The trial court denied the motion but included an instruction on scrutinizing the victim's testimony that read as follows:

> However, the Court instructs the jury that if you believe from the evidence in this case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, E[....] M[....], then you should scrutinize her testimony with care and caution; although a conviction of a sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible.

The defendant in *McPherson* argued in his motion for judgment of acquittal that the "uncorroborated contradicted testimony of the victim was inherently incredible and therefore the trial judge erred when she denied his motion for acquittal." He pointed to the lack of physical evidence, the contradictions of the prosecuting witness' trial testimony and out-of-court statements, the contradictions between the victim's testimony and her friend M.B., as well as the use of leading questions by the prosecutor when questioning the victim. *McPherson, supra,* at 616, 371 S.E.2d at 337.

We found in *McPherson* that the trial court's denial of the motion for judgment of acquittal was supported by the facts. We reiterated that the circuit court's standard for assessing a motion for acquittal in a sexual offense case was the previously stated *Beck* standard of inherent incredibility, with the issue of credibility being ordinarily a question for the jury. We concluded that the denial of the motion for judgment of acquittal was proper, as was the submission of the case to the jury with the referenced instruction to scrutinize the victim's testimony with care and caution.

The instruction in *McPherson* and the instruction given in the case at bar are quite similar. Both correctly state that a conviction for the sexual offenses so charged may be had on the uncorroborated testimony of the victim, unless the testimony of the victim is inherently incredible. Both instructions direct the jury to assess the credibility of the prosecuting witness with care and caution. The circuit judge's decision to instruct the jury, without the addition of the language as requested by the petitioner, was not an abuse of discretion, inasmuch as the instruction was a correct statement of the law, and more particularly, when we consider the entirety of the jury charge as a whole.

As previously stated, our review of the jury charge and instructions is deferential. We have held that

> [a] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion."

Syllabus Point 4, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

 We cannot review a particular instruction in a vacuum; it must be viewed with the other instructions and the general charge. When reviewing the charge in its entirety, not just this one portion of the charge as highlighted by the petitioner, we find that the jury was sufficiently instructed so as to ensure that the jurors understood the issues involved and were not misled on the appropriate law. The petitioner disputes only one portion of the instructions regarding witness credibility. The jury charge contains other sections wherein credibility of witnesses is discussed, in addition to sections on how to view the evidence, the State's burden of proof and other factors.

The resolution of this case by the jury boiled down to the credibility of the petitioner as compared to the credibility of the victim. The State's case was without forensic corroboration of the victim's recitation of the facts. The petitioner's defense was such that for him to be acquitted of these charges, the jury would have to believe his story and not believe the victim's recitation. The jury disagreed with the petitioner, finding him guilty of two of the six charges. The petitioner herein unsuccessfully urged the circuit court to include an additional instruction to the jury about the credibility analysis of the victim's uncorroborated testimony within this one portion of the charge. While we can understand that the petitioner wished to focus the jury's attention on the victim's truthfulness, especially as it related to the uncorroborated statement regarding a sexual assault, we believe that the jury was more than adequately and properly instructed on credibility as well as the burden of proof borne by the State within the entire charge, not just by this one instruction. Although there is no instructional error under these particular circumstances, if we had found error as claimed by the petitioner, the error would have to be deemed harmless.

 While the instruction does not constitute prejudicial error under the particular circumstances of this case, we do feel that the following instruction is a better statement of law in sexual assault cases where the victim's testimony is uncorroborated:

> The court instructs the jury that the defendant may be convicted on the uncorroborated testimony of the alleged victim in this case. However, you should scrutinize the alleged victim's testimony with care and caution. Although a conviction of a sexual offense may be obtained on the uncorroborated testimony of the alleged victim, you must be convinced beyond a reasonable doubt that the defendant is guilty. If you are not convinced beyond a reasonable doubt of the defendant's guilt, based upon the uncorroborated testimony of the alleged victim, then you shall find the defendant not guilty.

Therefore, while we find that the instructions as given in the circumstances of this case were adequate, in other cases of sexual offenses where the victim's testimony is uncorroborated, the aforementioned instruction may be more appropriate than the instruction given in the case *sub judice*.

## IV.

## CONCLUSION

For these reasons, we conclude that the Circuit Court of Jackson County committed no reversible error and that the conviction and sentence of the petitioner is affirmed.

Affirmed.

Justice McHUGH, deeming himself disqualified, did not participate.

Judge KEADLE, sitting by temporary assignment.