**FILED**
**April 22, 2025**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.)  No. 23-403** (Wetzel County CC-52-2022-F-2)

**Joseph B.,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner Joseph B. appeals the June 5, 2023, order entered by the Circuit Court of Wetzel County following his jury trial that sentenced him to one to five years of imprisonment for first-degree sexual abuse and ten to twenty years of imprisonment for sexual abuse by a custodian.[1] On appeal, the petitioner argues there was insufficient evidence to support his convictions and that the circuit court erred by denying his first motion for judgment of acquittal and by failing to rule upon his second motion for judgment of acquittal that he filed after the jury's verdict. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

The petitioner was indicted for one count each of first-degree sexual abuse and sexual abuse by a custodian after being accused of touching the breasts of his fifteen-year-old niece, R.U., for the purpose of gratifying his sexual desire. At trial, M.U. testified that, on May 28, 2020, her daughter, R.U., went to stay overnight with M.U.'s sister, H.B., who resided with the petitioner and R.U.'s twenty-two-year-old cousin, K.B. M.U. stated that when she gave R.U. permission to go there, she trusted that H.B. and the petitioner would be "responsible" for R.U. and that they would "keep [her] safe." When R.U. returned home the next day, she appeared upset and informed M.U. that the petitioner had "touched her inappropriately and it hurt." M.U. called H.B. to tell her what R.U. said, and M.U. heard the petitioner in the background say that R.U. was a "liar," and "[i]f I did anything, it was by accident." M.U. also reported this incident to Deputy Donald Bordenkircher of the Wetzel County Sheriff's Department. M.U. further testified that after this incident, R.U. "slept with a ball bat for about two and a half months . . . and a knife opened on her dresser because she was afraid that [the petitioner] was going to come hurt us because she told."

---

[1] The petitioner appears by counsel Kevin L. Neiswonger. The State appears by Attorney General John B. McCuskey and Deputy Attorney General  Nease Proper. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

Deputy Bordenkircher testified that he received a call from M.U. informing him "that her daughter[, R.U.,] was inappropriately touched by [the child's] uncle[, the petitioner]." Deputy Bordenkircher took a written statement from R.U. and scheduled an interview for her at the Child Advocacy Center. After observing R.U.'s interview at the Child Advocacy Center, Deputy Bordenkircher interviewed the petitioner on two occasions. In the first interview, the petitioner stated that he "tickled" R.U. on the ribs but denied touching her breasts; in the second interview, the petitioner admitted that "[m]aybe" he had touched her breasts. Recordings of these interviews were played for the jury.

R.U. testified that she stayed overnight at the petitioner's house with her cousin K.B., and since she was not with her parents, the people "in charge would have been my Aunt [H.B.] and [the petitioner]."[2] Further, R.U. said that it was not unusual for her to stay the night at the petitioner's home because "they're my family and Covid was going on so I couldn't hang out with my friends, so I wanted to spend as much time with family as I could." She added that she thought the petitioner's home "was a safe place for me to go." R.U. then stated that, on the morning of May 29, 2020, she was alone in bed when the petitioner tickled her stomach and grabbed her breasts. When R.U. "tried to get up," the petitioner squeezed her nipples "very intensely and pushed [her] back down." Eventually, the petitioner stopped when he heard his niece and nephew near the bedroom. R.U. stated that she was able to get off the bed after telling the petitioner she had to go to the bathroom, and he "patted [her] on the back and said, '[y]ou're stronger than you look and don't tell anybody, okay?'" After this incident, R.U. stated that she felt "very uncomfortable" and she left the house with K.B., who was going to work. R.U. testified that she "couldn't keep [her] emotions together until after an hour of being at" K.B.'s workplace and she stayed at work with K.B. "for about four hours" before she left with her cousin A. Additionally, R.U. said that she told A., "I think something happened to me, but I'm not sure exactly what you call it." R.U. then reported the incident to her mother, M.U. After the incident, R.U. explained that she did not look to see if the petitioner's actions left a mark on her breasts because she "felt disgusted" with herself. Several days later, R.U. gave a statement to Deputy Bordenkircher, and she affirmed that this statement was an accurate reflection of the incident with the petitioner.

After R.U. testified, the State rested its case, and the petitioner moved for a judgment of acquittal. First, the petitioner argued that he was not R.U.'s "custodian" because she went to the petitioner's house to stay with K.B., who was an adult at the time, and the petitioner did not give "permission" for R.U. to come to his house. Second, the petitioner argued that the State failed to prove that the petitioner had "sexual contact" with R.U.'s breasts because there was no evidence that the petitioner touched R.U.'s breasts "for the purpose of sexual gratification." The circuit court denied the petitioner's motion, ruling that "the testimony of [M.U.] and [R.U.] are sufficient to permit it to go to a jury on the issue of whether or not [the petitioner] was a guardian, custodian, or a person in position of trust." The court also ruled that "the circumstances testified to by [R.U.] lend themselves to the argument and the potential finding that it was sexual contact and for sexual gratification of [the petitioner]."

---

[2] R.U. also testified that two other minor children, the petitioner's niece and nephew, were in the home at the time of the incident.

2

The petitioner testified in his own defense, and he also presented testimony from his daughter, K.B., and his wife, H.B. K.B. testified that, on the evening of May 28, 2020, she picked R.U. up from her house and drove her to the residence where K.B. resided with the petitioner and H.B. Neither the petitioner nor H.B. were involved in the decision to let R.U. stay overnight, but K.B. told R.U. "to ask her parents." K.B. and R.U. watched movies that night and eventually retired to sleep in different rooms. When K.B. got up the next day, she and R.U. went to K.B.'s workplace, and K.B. testified that "[n]othing seemed wrong. [R.U.] was fine."[3] While at her workplace, K.B. recalled that she and R.U. called M.U. to see if R.U. could stay with K.B. again that night, but M.U. replied that "she wanted [R.U.] home that night because" she was fighting with R.U.'s father. After this phone call, R.U. "began to shut down" and hid in her boss's office, and she later left with their cousin A. K.B. further admitted that she did not know of any reason why R.U. would falsely accuse the petitioner of sexual abuse, and her relationship with R.U. was "not close" after May 29, 2020.

H.B. testified that, on the morning of May 29, 2020, the petitioner and R.U., along with the two other minor children in the home, "wrestl[ed] around" in a "pillow fight" while she was making breakfast.[4] H.B. stated that, at one point, she went into the bedroom and "wrestled around with them because [the petitioner] got a little rough and things started falling, and I told them to get out of my bedroom." H.B. emphasized that she could see into the bedroom from her vantage point in the kitchen. After breakfast, H.B. left the residence and R.U. "was still at the house with K.B. and [the petitioner]." When she left, H.B. did not notice any problem with R.U.'s demeanor. Later that evening, M.U. called H.B. and told her that R.U. claimed "that [the petitioner] touched her boob." H.B. informed the petitioner of R.U.'s accusation and he denied it, stating that "[i]f I touched her, it was an accident. It was never intentional." Further, H.B. stated that she did not believe R.U.'s accusations and denied that she had any kind of supervisory capacity over R.U. on the day in question because K.B., who was twenty-two years old at the time, "asked her to come stay all night."

Finally, the petitioner testified that K.B. and R.U. "made a plan" for R.U. to stay overnight at his house on May 28-29, 2020. The petitioner stated that, in the morning of May 29, 2020, he was in bed with R.U. and his younger niece and nephew, and a "tickling match" ensued. He also admitted to tickling R.U.'s "ribs and underneath her chin," and stated that R.U. was "[f]lopping around all over the place." When asked if he touched R.U.'s breasts, the petitioner testified, "[i]f I did, it was an accident." The petitioner further denied that he "jiggled [R.U.'s] breasts" or "squeezed her nipples," and testified that he did not know why R.U. would falsely accuse him of sexual abuse. Further, the petitioner admitted that K.B. was asleep when the "pillow fight" occurred, but he denied that he was "responsible" for R.U. that morning because "[K.B.] brought her. That was [K.B.]'s responsibility." But the petitioner admitted that he and H.B. were responsible for his younger niece and nephew who were present at the time because they were "the ones we asked to come to my house . . . ." On January 18, 2023, the jury returned a guilty verdict on both counts of the indictment, and the petitioner filed a second motion for judgment of acquittal on January 31, 2023. The circuit court did not rule upon this motion, and it sentenced the petitioner

---

[3] K.B. admitted that R.U. did not disclose the incident to her, and she did not witness it.

[4] H.B. also testified that K.B. was asleep at this time.

3

to a term of imprisonment on May 31, 2023. The petitioner appeals from the court's sentencing order.

On appeal, the petitioner argues that the circuit court erred when it denied his motion for a judgment of acquittal based on his claim of insufficient evidence. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citation omitted). We have further explained that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

First, the petitioner argues that there was insufficient evidence that the petitioner was R.U.'s "custodian"[5] to support his conviction for sexual abuse by a custodian.[6] We have held that "[t]he question of whether a person charged with a crime under West Virginia Code § 61-8D-5 (2010) is a custodian or person in a position of trust in relation to a child is a question of fact for the jury to determine." Syl. Pt. 4, *Harris v. Hatcher*, 236 W. Va. 599, 760 S.E.2d 847 (2014). Here, the jury heard evidence that it was not unusual for R.U. to stay overnight at the petitioner's home, and both she and M.U. thought that R.U. would be safe there. Despite the petitioner's protestation that he was not "responsible" for R.U. because his adult daughter K.B. invited her to stay the night, R.U. testified that she was alone with petitioner when he sexually abused her. When these circumstances are viewed in the light most favorable to the prosecution, a jury could reasonably find that the petitioner was R.U.'s "custodian" because she was in his "actual physical possession or care and custody" when the abuse occurred. *See Guthrie*, 194 W. Va. at 169, 461 S.E.2d at 663, Syl. Pt. 1; W. Va. Code § 61-8D-1(4). Therefore, we find the circuit court did not err by denying the petitioner's motion for judgment of acquittal based on the sufficiency of the evidence regarding his position as the victim's custodian.

---

[5] *See* W. Va. Code § 61-8D-1(4) (defining "custodian" as "a person over the age of 14 years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether that person has been granted custody of the child . . . . includ[ing] . . . the spouse of a parent, guardian, or custodian . . . .").

[6] *See* W. Va. Code § 61-8D-5(a) (providing, in relevant part, that "[i]f any . . . custodian . . . shall engage in . . . sexual contact with[] a child under his or her care, custody or control . . . then such . . . custodian . . . shall be guilty of a felony . . . .").

4

Second, the petitioner argues that the circuit court erred in denying his motion for judgment of acquittal for first-degree sexual abuse[7] because there was insufficient evidence that the petitioner touched R.U.'s breasts for "the purpose of sexual gratification."[8] We have held that "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)." Syl. Pt. 1, *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011). Also, we have ruled that "a fact finder may infer the element of sexual gratification from the location of the touching, *i.e.*, breast and pubic area, and the absence of a medical reason for the touching." *State v. Todd C.*, 250 W. Va. 642, __, 906 S.E.2d 295, 311 (2023) (citation omitted). In this case, R.U. testified that she was on a bed with the petitioner when he grabbed her breasts, squeezed her nipples, and told her not to tell anyone about it. The petitioner does not argue that R.U.'s testimony is inherently incredible, and there is no indication that there was a medical reason for the petitioner to touch her breasts. Considering this testimony, a reasonable jury could find that the petitioner touched R.U.'s breasts for the purpose of gratifying his sexual desire. Thus, we conclude that the circuit court did not err in denying his motion for judgment of acquittal on this basis.

Finally, the petitioner also argues that the circuit court erred by failing to rule on his second motion for judgment of acquittal. Rule 29(c) of the West Virginia Rules of Criminal Procedure provides that "a motion for judgment of acquittal may be made or renewed within ten days after the jury is discharged or within such further time as the court may fix during the ten-day period." But this motion was filed on January 31, 2023, which was more than "ten days after the jury [was] discharged" when it rendered its verdict on January 18, 2023, and there is no indication that the court extended this deadline. Further, the record does not reflect that the petitioner ever asked the court to rule upon this motion at the sentencing hearing. Considering these circumstances, we conclude that the circuit court did not err by failing to rule on the petitioner's second motion for judgment of acquittal because it was untimely filed.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 22, 2025

---

[7] *See* W. Va. Code § 61-8B-7(a)(1) (providing, in relevant part, that a person is guilty of first-degree sexual abuse when "[s]uch person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion . . . .").

[8] *See* W. Va. Code § 61-8B-1(5) (defining "sexual contact" as "any intentional touching, either directly or through clothing, of the breasts . . . and the touching is done for the purpose of gratifying the sexual desire of either party.").

5

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV