# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 24-136 (**Mingo County CC-30-2023-F-47)

**Thomas Woodrow Cook,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Thomas Woodrow Cook appeals the Circuit Court of Mingo County's February 8, 2024, sentencing order.[1] The petitioner argues that the evidence presented at trial was insufficient to support his conviction and that the jury was improperly instructed regarding the child victim's uncorroborated testimony. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The petitioner's trial on one count of third-degree sexual assault began on November 13, 2023. The State's evidence at trial revealed that the petitioner's victim, M.L., was a fourteen-year-old girl enrolled in a Mingo County public school whose individual education plan indicated that she had a form of Aspergers Syndrome and an intellectual disability which manifested as an inability to "distinguish between something that's appropriate and inappropriate[.]" The school's vice-principal was notified that M.L. had inappropriately touched a fellow student and had also been seen with a sex toy on school grounds. The vice-principal met with M.L. on March 21, 2023, to discuss these incidents. During their meeting, M.L. revealed that a neighbor, "Thomas," had ordered the sex toy for her and that he had certain toys that he liked for them to use together. M.L. further disclosed that Thomas had intercourse with her while she was in his home. Consequently, school officials called law enforcement and child protective services. M.L. told law enforcement that "she had sexual intercourse with Thomas Woodrow Cook at his residence[.]" Later that day, the petitioner was arrested at his residence, which was located next door to M.L.'s home. Law enforcement verified the petitioner's date of birth, noting that he was forty-two years old at the time of his arrest.

---

[1] The petitioner is represented by counsel Paul Andrew Montgomery. The State of West Virginia appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease, and Senior Assistant Attorney General Michele Bishop. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Before M.L. took the witness stand to testify, the petitioner exited the courtroom pursuant to the provisions of West Virginia Code § 62-6B-4(a), which permits the use of closed-circuit television for a child witness' testimony.[2] M.L. testified in a manner consistent with her previous statements to the vice-principal, law enforcement, and CPS, indicating that her neighbor, "Thomas. . . . Cook," touched her privates with his privates. A medical expert in pediatric child abuse testified that M.L. "disclosed penile-vaginal and penile-anal penetration" and examination revealed a "complete tear" in M.L.'s hymen tissue, evidencing penile-vaginal intercourse. A forensic interviewer with the Child Advocacy Center testified that M.L. disclosed that "Thomas Cook . . . inserted his private part into her private part." The State played M.L.'s recorded forensic interview for the jury, and the video was admitted into evidence.[3]

At the close of the State's evidence, the petitioner moved for a judgment of acquittal, arguing that M.L. failed to specifically identify the petitioner as her abuser. The circuit court denied the petitioner's motion. Thereafter, the petitioner rested his case without admitting any testimony or evidence.

During arguments regarding jury instructions, the petitioner objected to the "*Child's Uncorroborated Testimony*" instruction, which read as follows:

A conviction for any sexual offense may be obtained on the uncorroborated testimony of the child victim alone *unless* the testimony of the child victim is inherently incredible. "Inherent incredibility" is more than contradiction and lack of corroboration. Rather, inherently incredible testimony is testimony that is completely untrustworthy. Nevertheless, if the jury believes from the evidence in this case that the crime charged against the Defendant rests alone on the testimony of the child victim, then you should scrutinize the child victim's testimony with care and caution.

(Emphasis in original). The petitioner argued that this instruction impermissibly shifted the burden of proof. The court overruled the petitioner's objection.

The circuit court's charge to the jury included the challenged child's uncorroborated testimony instruction and an instruction regarding the State's burden of proof, which stated, "[t]he jury will remember that a defendant is never to be convicted on mere suspicion or conjecture. The burden to prove guilt beyond a reasonable doubt never shifts to a Defendant[.]" The court also

---

[2] West Virginia Code § 62-6B-4(a) provides:

If the court determines that the use of live, two-way closed circuit testimony is necessary and orders its use the defendant may, at any time prior to the child witness being called, elect to absent himself from the courtroom during the child witness' testimony. If the defendant so elects the child shall be required to testify in the courtroom.

[3] M.L.'s forensic interview was not included within the appendix record.

2

instructed the jury that they were the sole "judges of the weight of the evidence" and the sole judges of the credibility of witnesses, meaning that they were the sole judges of "the truthfulness or lack of truthfulness of the witness." The court further instructed the jury that "[i]nconsistencies or discrepancies in the testimony of a witness or between or among the testimony of different witnesses may or may not cause you to discredit such testimony."

The jury convicted the petitioner of third-degree sexual assault. Post-trial, the petitioner renewed his motion for an acquittal, which the circuit court denied. On January 23, 2024, the court sentenced the petitioner to not less than one nor more than five years of imprisonment, a $10,000 fine, and thirty years of supervised release upon completion of his term of imprisonment. The court entered a corresponding sentencing order on February 8, 2024, and the petitioner now appeals.

In his first assignment of error, the petitioner argues that the circuit court erred in denying his motions for judgment of acquittal.[4] The petitioner contends that the evidence at trial was insufficient to sustain a verdict of guilty for his third-degree sexual assault conviction because the State failed to prove the identity element of the offense. He specifically claims that the evidence was insufficient because M.L. did not identify the petitioner during trial as the person who had sexually assaulted her.

"The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011). Additionally, we have held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). West Virginia Code § 61-8B-5(a)(2) provides that a defendant is guilty of third-degree sexual assault when he, "being 16 years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than 16 years old and who is four years younger than the defendant." *Id.*

Here, the evidence admitted at trial was sufficient to identify the petitioner as the perpetrator of M.L.'s abuse: M.L. identified the petitioner by name when informing school officials that her neighbor had sexual intercourse with her; law enforcement arrested the petitioner at an address located next door to M.L.'s home; M.L. informed law enforcement, a medical doctor, and a forensic evaluator that the petitioner had sexual intercourse with her; and M.L. testified that

---

[4] The petitioner also assigns error to the circuit court's denial of his motion for a new trial. However, because the petitioner makes this argument only in passing, without discussion or the citation of authority, we decline to consider this issue on appeal. *See generally* W. Va. R. App. P. 10(c)(7).

3

Thomas Cook had touched her privates with his privates. Viewing this evidence in the light most favorable to the prosecution, we determine "that any rational trier of fact could have found the essential element" of the petitioner's identity to have been proven beyond a reasonable doubt. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 1, in part. Moreover, we note that the petitioner has not cited any legal authority supporting his assertion that an in-court identification is required to prove identity. *See* W. Va. R. Crim. P. 10(c)(7) (providing, in relevant part, that an appellate "brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on"). Accordingly, we conclude that the court did not err in denying the petitioner's motion for a judgment of acquittal.

The petitioner next argues that the circuit court erred in overruling his objection to the child's uncorroborated testimony jury instruction. Specifically, the petitioner asserts that the court's uncorroborated testimony instruction confused the jury and diminished the State's burden of proving its case beyond a reasonable doubt. The petitioner further contends that the court's instruction diminished "the role of the jury to determine [the] credibility of the witness and weighing [of] the evidence[.]"

In reviewing jury instructions, we have held that "the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, in part, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). Further,

> [w]e review jury instructions to determine whether, taken as a whole and in light of the evidence, they mislead the jury or state the law incorrectly to the prejudice of the objecting party. So long as they do not, we review the formulation of the instructions and the choice of language for an abuse of discretion. We will reverse only if the instructions are incorrect as a matter of law or capable of confusing and thereby misleading the jury.

*Guthrie*, 194 W. Va, at 671-72, 461 S.E.2d at 177-78.

In *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011), the Court addressed an uncorroborated testimony instruction similar to that given at the petitioner's trial. In that case, the circuit court had given the following instruction to the jury regarding the uncorroborated testimony of the fifteen-year-old victim:

> A conviction for the crimes charged by the indictment may be obtained or rest on the uncorroborated testimony of the alleged victim in this case, [victim's name], unless you determine that such testimony is inherently incredible. The term "inherently incredible" means more than a contradiction, inconsistency or lack of corroboration. For the jury to decide the testimony is inherently incredible, you must decide that there has been a showing of complete untrustworthiness. In this regard you should scrutinize her testimony with care and caution.

*Id.* at 520, 721 S.E.2d at 539. In upholding the circuit court's denial of the petitioner's request to

supplement the instruction with language regarding the victim's credibility, this Court indicated that the instruction "more than adequately and properly instructed on credibility as well as the burden of proof borne by the State within the entire charge, not just by this one instruction." *Id.* at 522, 721 S.E.2d at 541.

As in *Haid*, we determine that the circuit court adequately and properly instructed the jury regarding uncorroborated testimony. The court's language within the "*Burden of Proof*" and "*Beyond a Reasonable Doubt*" sections of the jury's charge stated that the "burden of proof is on the State of West Virginia to establish guilt of the [petitioner] beyond a reasonable doubt," and the burden "never shifts" from the State to the accused. Further, the court's language within the "*Weight of the Evidence*" and "*Credibility of Witnesses*" portions of the jury charge indicated that the jury was the "sole judge[] of the weight of the evidence" and "the sole judge[] of the credibility of the witnesses." Finally, the court informed the jury that they were free to decide how inconsistencies or discrepancies in testimony impacted a witness' credibility. For these reasons, we conclude that "the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misl[ed] by the law." *Guthrie*, 194 W. Va. at 663-64, 461 S.E.2d at 169-70, Syl. Pt. 4, in part. Accordingly, under the facts and circumstances of this case, we find no error in the circuit court's charge to the jury.[5]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 21, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing

---

[5] Although we find no error in the court's charge to the jury under the circumstances of this case, we note that the Court has previously endorsed the following language for an uncorroborated testimony instruction:

> The court instructs the jury that the defendant may be convicted on the uncorroborated testimony of the alleged victim in this case. However, you should scrutinize the alleged victim's testimony with care and caution. Although a conviction of a sexual offense may be obtained on the uncorroborated testimony of the alleged victim, you must be convinced beyond a reasonable doubt that the defendant is guilty. If you are not convinced beyond a reasonable doubt of the defendant's guilt, based upon the uncorroborated testimony of the alleged victim, then you shall find the defendant not guilty.

*Haid*, 228 W. Va. at 522, 721 S.E.2d at 541.

Justice Gerald M. Titus III